UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, a minor, by and through her parents and natural guardians, RICHARD DOE and MARY DOE, | CIVIL DIVISION<br><br>Case No. _____ |
| Plaintiff, | |
| v. | |
| CHARLEROI SCHOOL DISTRICT; BETHLEHEM-CENTER SCHOOL DISTRICT; JENNIFER MARIE JOYCE; and PATRICIA MASON, | |
| Defendants. | |

**COMPLAINT AND JURY DEMAND**

A.  *Preliminary Statement*

1.  The plaintiff Jane Doe, by and through her parents and natural guardians, brings this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 and 42 U.S.C. § 1983, to redress violations of her right to be free from sexual harassment, sexual assault and a hostile educational environment in her education based upon her gender. A jury trial is demanded.

B.  *Jurisdiction and venue*

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all defendants reside in this district and the events giving rise to the claims occurred in this district.

C.  **Parties**

4.  The plaintiff Jane Doe is a seventeen-year-old female sexual assault survivor. At all times relevant, Jane Doe resided with her parents in Washington County, Pennsylvania 15022. Jane Doe was a student at the defendant Charleroi School District from August 2005 until August 2013, at which time she withdrew from Charleroi School District and enrolled in 21st Century Charter School. Jane Doe was fifteen years old at the time of the sexual assault detailed herein.

5.  Richard Doe and Mary Doe are husband and wife, respectively, and are the parents and natural guardians of Jane Doe. At all times relevant, Richard Doe and Mary Doe resided together and with Jane Doe in this district.

6.  The defendant Charleroi School District ("Charleroi") operates Charleroi High School, which is a public school in the Commonwealth of Pennsylvania, County of Washington and it receives federal funds for the operation of the school.

7.  The defendant Bethlehem-Center School District ("Bethlehem") operates Bethlehem High School, which is a public school in the Commonwealth of Pennsylvania, County of Washington and it receives federal funds for the operation of the school.

8.  The defendant Patricia Mason ("Mason" or "Principal Mason") is an adult individual residing in the Commonwealth of Pennsylvania, and, at all times relevant, was the Principal of Charleroi and was acting with the authority of the school district in her official capacity. Principal Mason had the authority to take corrective measures based upon the presence of sexual harassment or a hostile educational environment.

9. At all relevant times relevant hereto, Principal Mason had the duty and authority to effectuate the policies and customs of Charleroi and to implement and execute all federal state and school district regulations and/or policies relevant to the operation of a public school.

10. The defendant Jennifer Marie Joyce ("Joyce") is an adult individual residing in this district. At all times relevant, Joyce was a teacher of defendant Charleroi and was in charge of the Charleroi's 2012 school musical and was the one who recruited Jeffrey A. Hahn, Jr. (identified below) from Bethlehem to act as its producer.

11. At all relevant times relevant hereto, Joyce had the duty and authority to effectuate the policies and customs of Charleroi and to implement and execute all federal state and school district regulations and/or policies relevant to the production and presentation of Charleroi's 2012 school musical.

12. At all relevant times relevant hereto, Charleroi and Bethlehem implemented and executed its polices and customs in regard to the events that resulted in the deprivation of Jane Doe's constitutional, statutory and common law rights.

13. Charleroi and Bethlehem are responsible to ensure that all of their respective employees are properly trained and supervised in the course of their employment relationships with their respective school districts.

D. **Factual History**

   I. **Events Leading Up To And Including Jeffrey A. Hahn's Sexual Harassment And Sexual Assault Against Jane Doe**

14. Jeffrey A. Hahn, Jr. ("Hahn") is an adult individual currently serving a prison sentence and residing at the Pennsylvania State Correctional Institute at Somerset, 1600 Walters Mill Road, Somerset, Somerset County, Pennsylvania 15510. At all times relevant, Hahn was a teacher employed by Bethlehem. He was "loaned" to Charleroi in approximately November

2011 pursuant to an agreement entered into by the two school districts to act as the producer of a school musical at Charleroi. In such capacity, he was a servant, employee, agent and/or ostensible agent of both Charleroi and Bethlehem.

15. At all times relevant, defendant Bethlehem interviewed, hired, employed, trained and supervised Hahn, who was employed as a teacher at defendant Bethlehem's Junior High School.

16. While employed by Bethlehem, Hahn engaged in inappropriate relationships and contacts with female students. Upon information and belief, Bethlehem knew about one or more of these inappropriate relationships and contacts and failed to either fully investigate such allegations and/or discipline Hahn as a result.

17. At all times relevant, defendant Charleroi interviewed, hired, employed, trained and supervised Hahn for the production and/or direction of the Charleroi junior-senior high school's March 2012 musical, "Back to the 80s," from in or about November 2011 through the presentation of the musical in March 2012, and until the end of the 2012 school year.

18. Hahn engaged in a romantic relationship with Jane Doe during and immediately after her participation in the musical. Initially, Hahn limited the relationship to telephone and other forms of electronic conversation, and occasional in-person meetings without physical or sexual contact. As time progressed, however, Hahn's conduct included more physical interaction with Jane Doe, including handholding, hugs and other physical contact, often in public and in the plain view of other students and teachers.

19. On or about May 4, 2012, Hahn requested minor plaintiff to help remove stage props from a basement storage room of defendant Charleroi's High School auditorium. When the two met in said room, Hahn subdued, sexually assaulted and forcibly raped minor plaintiff.

During the rape, Hahn slammed Jane Doe's head against a wall, lacerating her scalp and causing her to bleed. There was a blood stain on the wall which remained there for the remainder of the school year.

20. Joyce, who was Hahn's supervisor for purposes of the musical, was informed of the romantic relationship between Hahn and Jane Doe at some point in March or April 2012 by Jane Doe, herself, and by two friends of Jane Doe. Joyce merely warned Hahn to stop the inappropriate relationship, but did not further investigate the matter or take any disciplinary action to remove Hahn from Charleroi's employment, despite having the authority to do so. Further, Joyce did not report said relationship to the police or other appropriate criminal authorities. Subsequently, Joyce was charged and sentenced to twelve (12) months of court supervision (ARD) as punishment for the charge of failing to report suspected child abuse.

21. At all relevant times, defendants Charleroi and Bethlehem knew that Hahn posed a threat to female students, including sexual assault and/or rape. Defendants Charleroi and Bethlehem had policies in place that required them to control Hahn and to remove him immediately upon credible allegations of inappropriate relationships or contacts with female students.

22. Despite actual notice of Hahn's continued inappropriate relationships and contacts with female students, including Jane Doe, the defendants consciously failed to supervise Hahn and/or terminate Hahn's employment and did not take any further additional action against him. Further, despite actual notice, the defendants did not further investigate Hahn's conduct and/or take any additional steps to warn or protect female students of Charleroi School District. The defendants exhibited conscious and deliberate indifference to the grave consequences known to them by their failure to act.

23. Criminal charges for sexual assault, corrupting a minor, institutional sexual assault and statutory sexual assault were brought against Hahn for his actions as described above. He eventually accepted a plea deal and was sentenced to four (4) to eight (8) years imprisonment followed by a decade of state-supervised probation.

II. **Events Relating To Sexual Harassment, Sexually Hostile Educational Environment And Retaliation To Which Jane Doe Was Subjected After The Sexual Assault**

24. Jane Doe returned to Charleroi for the following school semester, which began in August 2012. From the first day of class, Jane Doe was subjected to harassing confrontations and comments by fellow students regarding the sexual assault and Jane Doe's relationship with Hahn. She had flashbacks regarding the sexual assault while in school, and was visibly reminded of the assault because she regularly walked past the wall that had the stain from her blood. She frequently broke down emotionally, had panic attacks and began crying during classes.

25. During one such episode in August 2012, Jane Doe was crying uncontrollably during her math class. Principal Mason pulled Jane Doe out of class and demanded to know why she was crying and making such a scene. When Jane Doe told Principal Mason that she was upset about what had happened to her, Principal Mason said that she did not believe that Jane Doe was raped by Hahn and that Jane Doe needed to stop telling outrageous stories. Principal Mason said that Jane Doe was making all of this up because she just wanted attention. Principal Mason forbade Jane Doe from seeking help or guidance from any teachers and said that Jane Doe was not permitted to leave the classroom and gave Jane Doe "two minutes to get straightened up and to return to class."

26. Shortly after this incident, Jane Doe's parents contacted Superintendent Brad Ferko and arranged a meeting in an effort to ensure that Jane Doe would have a safe learning environment free of harassment.

27. During this meeting, Jane Doe's parents requested that her daughter be given the opportunity to get counseling as needed during the school day, including being able to discuss issues with selected and trusted teachers and/or counselors. Jane Doe's parents were concerned that the school district was not giving Jane Doe a safety net to help her through this difficult process. Principal Mason, one of the attendees at this meeting, was visibly disturbed with Jane Doe's parents' requests and expressed that they were unnecessary. Principal Mason said that Jane Doe needed to stay in class during the day and quit her "emotional outbursts" and that Jane Doe simply needed to focus on doing her schoolwork.

28. Principal Mason, however, relented on the issue of Jane Doe selecting three teachers to be able to talk with. However, after a couple of weeks, Principal Mason revoked this practice and told the teachers that they were not permitted to give Jane Doe passes. Principal Mason told Jane Doe that she could not leave class to get counseling because she would have to travel down the halls and school officials would not know where she was.

29. Because Charleroi was not taking any steps to help Jane Doe in school, and, in fact, was retaliating against her for seeking help, Jane Doe's parents decided to pull her out of school and enroll her in the school district's cyber school program effective October 1, 2012. Initially, Superintendent Ferko tried to talk Jane Doe's parents out of this decision. Jane Doe's parents told Superintendent Ferko that Jane Doe could not remain in school because Principal Mason would not permit Jane Doe to get counseling as needed and was otherwise engaging in hostile, retaliatory and harassing actions towards Jane Doe. Superintendent Ferko finally agreed

to allow Jane Doe to attend cyber school for periods 1 through 6. Jane Doe then went to school for the last two periods of the day, attending algebra and band/music in the classroom setting.

30. Jane Doe tried to make this system work, but she continued to have problems while attending class in the school district's building. Students continued to make harassing comments about Jane Doe's relationship with Hahn and the sexual assault. During one band class, Jane Doe started to cry and her teacher asked her what was wrong. Jane Doe responded that she could not handle seeing her blood on the wall where Hahn had slammed her head during the sexual assault. Jane Doe had asked school officials repeatedly to remove the stain from the wall, but, after nearly six months nothing had been done and the stain remained, serving as a daily painful reminder of what had happened to Jane Doe.

31. At one point in approximately October 2012, Principal Mason called Jane Doe into her office and told her that she did not want Jane Doe continuing to "bother" the teachers with "your problems." Principal Mason told Jane Doe that "it is time to grow up and quit talking about what happened to you." Jane Doe broke down and said that Hahn had raped her. Principal Mason accused Jane Doe of "changing your story so many times that no one believes you." At this point, Jane Doe became hysterical and asked to go home. Principal Mason called up Jane Doe's mother and told her that "Jane Doe is telling outrageous stories in school."

32. In December 2012, Jane Doe got a part in the high school musical. Other students were allowed to attend practice during school but Jane Doe's teachers were told by Principal Mason that they were not allowed to give Jane Doe a hall pass to attend practices. When Jane Doe's mother asked Principal Mason about this, she said that "I can't have Jane Doe roaming the halls doing whatever she wants." Principal Mason also said that Jane Doe was caught off

campus during school hours and therefore her pass privileges had been revoked. However, Jane Doe's parents were never notified about this alleged incident and it was not in any of her records.

33. In 2013, Charleroi continued its pattern of harassing conduct by reporting Jane Doe absent on several occasions without permission and referred the matter to a truancy prevention program and Children and Youth Services ("CYS") for investigation and further action. However, Charleroi knew that all of the absences were excused, and included appointments for doctors' visits and appearances at the criminal proceedings against Hahn.

34. Principal Mason instructed the teachers at Charleroi to stop talking with Jane Doe shortly after Hahn's conviction and before his sentencing hearing and that they were to limit any contact or communications with Jane Doe.

35. Because of the hostile environment, Jane Doe's parents sought permission to transfer Jane Doe out of Charleroi to another school district after completion of the 2012-2013 school year. Charleroi actively blocked and refused to facilitate the transfer and told Jane Doe's parents they would have to pay over $10,000 in tuition for the transfer.

36. Finally, Jane Doe withdrew from Charleroi at the beginning of the 2013-2014 school year and enrolled in an independent cyber school program.

37. Although Jane Doe and her parents brought these issues to the school district's attention, no reasonable attempts were made to address the harassment and the school district continued to engage in harassing behavior.

38. Even though the school district knew of its Title IX obligations, it had no policies or procedures in place to address Jane Doe's parents' legitimate concerns and Jane Doe's concerns and needs.

## FIRST CAUSE OF ACTION
### Violation of Title IX, 20 U.S.C. § 1681
### Sexual harassment and sexual assault by Hahn
### Plaintiff v. Defendants Charleroi, Bethlehem, Joyce and Mason

39. All preceding paragraphs of this complaint are incorporated herein by reference.

40. The defendants created and/or permitted to continue sexual harassment and hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Due to the defendants' failure to properly act despite actual knowledge, as detailed herein, Jane Doe was subject to sexual harassment and sexual assault by Hahn. The defendants and school district officials who had the authority to take corrective measures had actual notice of the harassment, but were deliberately indifferent.

41. Jane Doe has suffered severe and permanent psychological and physical damage, emotional distress and decreased educational opportunities as a direct and proximate result of the defendants' violations of her rights under Title IX.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. § 1983
### Sexual harassment and sexual assault by Hahn
### Plaintiff v. Defendants Charleroi, Bethlehem, Joyce and Mason

42. All preceding paragraphs of this complaint are incorporated herein by reference.

43. Jane Doe had the right to equal protection of the laws and an educational environment that was free from sexual harassment and sexual assault pursuant to the Fourteenth Amendment to the United States Constitution and Title IX.

44. The defendants, while acting under color of state law, violated these rights and unlawfully discriminated against Jane Doe and subjected Jane Doe to disparate treatment based upon her gender.

45.     The defendants implemented a policy, pattern, custom and practice of preferential treatment with deliberate indifference towards female students, such as Jane Doe, and this policy, pattern, custom and practice proximately caused a violation of Jane Doe's constitutional rights to equal access to an education and an education free of sexual harassment and sexual assault.

46.     Jane Doe has suffered severe and permanent psychological and physical damage, emotional distress and decreased educational opportunities as a direct and proximate result of the defendants' violations of equal protection and Title IX rights in violation of 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION
### Violation of Title IX, 20 U.S.C. § 1681
### Sexually hostile educational environment and retaliation
### Plaintiff v. Charleroi, Joyce and Mason

47.     All preceding paragraphs of this complaint are incorporated herein by reference.

48.     The defendants created and/or permitted to continue sexual harassment and hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Jane Doe was subjected to a sexually hostile educational environment and retaliation in response to her and her parents' attempts to remedy the sexually hostile educational environment. The defendants and school district officials who had the authority to take corrective measures had actual notice of the harassment and hostile environment, but were deliberately indifferent to the harassment and hostile environment and engaged in retaliation in response to Jane Doe's and her parents' attempts to remedy the sexually hostile educational environment.

49.     Jane Doe has suffered severe and permanent psychological damage, emotional distress and decreased educational opportunities as a direct and proximate result of the defendants' violations of her rights under Title IX.

## FOURTH CAUSE OF ACTION
### Violation of 42 U.S.C. § 1983
### Sexually hostile educational environment and retaliation
### Plaintiff v. Charleroi, Joyce and Mason

50. All preceding paragraphs of this complaint are incorporated herein by reference.

51. Jane Doe had the right to equal protection of the laws and an educational environment that was free from sexual harassment pursuant to the Fourteenth Amendment to the United States Constitution and Title IX.

52. The defendants, while acting under color of state law, violated these rights and unlawfully discriminated against Jane Doe and subjected Jane Doe to disparate treatment based upon her gender.

53. The defendants implemented a policy, pattern, custom and practice of preferential treatment with deliberate indifference towards female students, such as Jane Doe, and this policy, pattern, custom and practice proximately caused a violation of Jane Doe's constitutional rights to equal access to an education and an education free of sexual harassment and a non-hostile educational environment.

54. Jane Doe has suffered severe and permanent psychological damage, emotional distress and decreased educational opportunities as a direct and proximate result of the defendants' violations of equal protection and Title IX rights in violation of 42 U.S.C. § 1983.

WHEREFORE, the plaintiff respectfully requests that judgment be entered in her favor against the defendants and that the defendants be required to provide all appropriate remedies under Title IX and 42 U.S.C. § 1983, including compensatory damages, attorney's fees, costs and any other relief the court deems appropriate.

Respectfully submitted,

*/s/ Peter D. Friday*
Peter D. Friday
Pa. I.D. No. 48746

FRIDAY & COX LLC
1405 McFarland Road
Pittsburgh, PA 15216

(412) 561-4290

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

JOHNSON, BRUZZESE & TEMPLE
300 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff